AETNA LIFE INSURANCE COMPANY v. ARDELLA A. HICKS ET AL.

Decided February 17, 1900.

1.  Accident Insurance—Cause of Death—Fact Case.

For facts held sufficient to sustain a verdict finding that the death of the insured was caused by violent and external means, instead of the diseased condition in which he then was, see the opinion.

2.  Same—Same—Allegata and Probata.

Where the petition in the suit on an accident policy averred that the death of the insured was caused from his having wrenched and hurt his back, ruptured his stomach, and dislocated one of his kidneys, and the evidence showed that the death was caused by injury either to his stomach proper, or to the pyloric orifice connecting the stomach with the intestines, with such effects as must have resulted from a rupture of the membrane, there was not such variance as to warrant the rejection of the evidence.

3.  Same—Disease and Voluntary Exposure Not Contributing to Death.

Recovery on an accident policy is not defeated by reason of a condition therein denying recovery if the death of the insured occurs while he is affected with disease, or is engaged in voluntary over-exertion or voluntary exposure to unnecessary danger, where the death occurred while the insured was ill and unnecessarily making a trip contrary to the advice of his physicians, but was not caused by the diseased condition nor the over-exertion, but entirely by an accident such as might have happened to anyone else.

4.  Attorney Fees—Penalty—Insurance Company.

The statute allowing plaintiff in action against life or health insurance companies to recover 12 per cent damages and attorney's fees is not obnoxious to the fourteenth amendment of the Federal Constitution. Rev. Stats., art. 3071.

APPEAL from Colorado. Tried below before Hon. MUNFORD KENNON.

*Harry P. Lowther* and *M. H. Townsend,* for appellant.

*W. L. Adkins,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—Appellee, Ardella A. Hicks, joined by her husband, Ben Hicks, sues as beneficiary in an accident insurance policy issued by appellant on the 16th day of June, 1897, to Ellis Hicks. The policy is in the ordinary form, and insures the said Ellis Hicks for a term of one year in the sum of $3000 against death resulting solely from bodily injuries received through external violent and accidental means, if death occurs within ninety days after such injuries are received. Said policy contains among others the following conditions: "This insurance does not cover accident nor death resulting wholly or partly, directly or indirectly, from any of the following causes, or while so engaged or affected: Disease or bodily or mental infirmities, voluntary over-exertion, voluntary exposure to unnecessary danger."

Plaintiffs allege in their petition: "That on the 19th day of April, 1898, the said Ellis Hicks, while in one of the passenger cars of the Southern Pacific Company provided for the use and transportation of passengers, and on his way over said company's road to Columbus, Texas,

between San Antonio and Luling, stations on the road, in attempting to get a drink of water from the cooler in said car, was by a sudden jerk or lurch of said car thrown backward against the arm of the seat of the car in his rear, and in an effort to retrieve his balance and regain his feet, wrenched and hurt his back, ruptured his stomach and dislocated one of his kidneys, from which injuries the said Ellis C. Hicks on the 22d day of April, 1898, died in Columbus, Colorado County, Texas, his then place of residence."

The defendant company answered by general demurrer, general denial, and by special plea setting forth that the penalty of 12 per cent and the $500 attorney's fees claimed by plaintiffs were claimed under article 3071 of the Revised Statutes of this State, and that such article of the statute was in contravention of the fourteenth amendment of the Constitution of the United States; and further pleaded that the death of said Ellis Hicks was not caused solely by the accident and injuries alleged in plaintiffs' petition, "but that said accident and death were the result wholly and partly and directly and indirectly of disease and bodily infirmity, and resulted from voluntary over-exertion and voluntary exposure to unnecessary danger, and occurred while said Hicks was afflicted with dangerous and deadly disease and with bodily infirmities, and while he was engaged in voluntary over-exertion and voluntary exposure to unnecessary danger, in this, to wit:  That prior to said injury set forth and alleged in plaintiffs' petition, the said Ellis Hicks had been affected with typhoid fever at San Marcos, Texas; that by reason of said fever he had been confined to his bed and physically was in a very weak and debilitated condition, and was under the care and charge of a physician; that on the 18th day of April, 1898, four days before his death, the said Hicks, contrary to the advice and under protest of his attending physician, and while still suffering from said disease, and before he had recovered therefrom, and while still physically weak and debilitated, arose from his sickbed in San Marcos and proceeded to take the journey by rail from San Marcos to Columbus, Texas; that said Hicks as well as plaintiffs herein was informed by his attending physician at San Marcos that he would run considerable risk, and that it would be dangerous to his life for said Hicks to undertake said journey in his then diseased and debilitated condition, and that he as well as plaintiff was advised by said attending physician not to undertake said journey, but to remain in San Marcos until he had fully recovered from said disease; but that said Hicks, notwithstanding that he was at the time suffering with said fever, and notwithstanding that he was weakened and debilitated from said disease, and notwithstanding that he was informed and knew the danger and risk necessarily attendant upon a journey of the character he proposed taking, owing to his said diseased condition, yet voluntarily assuming said risk and with full knowledge of the danger to his life therefrom, said Hicks, without there being any necessity therefor, did arise from his sickbed at San Marcos, and did board the train at San Marcos and did proceed thereby to San Antonio,

Texas, where, without assistance, he left said train and walked about to different places in the city and without assistance again boarded a railroad train for Columbus, Texas, and that while on said train and while the same was in motion, without assistance said Hicks many times arose from his seat and walked about; and this defendant averred that if said Hicks met with the accident and suffered the injury alleged, said accident and injury were the direct result of said disease and bodily infirmity with which the said Hicks was at the time affected, and was the direct result of his voluntary over-exertion, and his said voluntary exposure to unnecessary danger, and while said Hicks was so engaged and affected, and that the death of the said Hicks did not result, independently of all other causes, from said accident and injury, if any there were, but was contributed thereto and was directly and indirectly the result of said disease, and that said death was the result of said voluntary over-exertion and said voluntary exposure to unnecessary danger as thereinbefore set forth; all of which said defendant was ready to verify; wherefore it prayed judgment whether said plaintiff could or should have and maintain its action aforesaid against said defendant."

The trial of the case resulted in a judgment for appellees for $3000, with 6 per cent interest from September 28, 1898, the statutory penalty of 12 per cent, and $500 attorney's fees.

The evidence shows that the deceased, Ellis Hicks, had been sick in bed with fever at San Marcos, Texas, for at least four days prior to the 18th day of April, 1898, on which day he telegraphed his mother, Ardella Hicks, of his condition, and she at once went to him at San Marcos. She reached San Marcos on the night of the 18th and found Ellis in bed with fever. The next day his doctor called to see him and told her that her son had typhoid fever. She asked the doctor if she could take Ellis home to Columbus, and was told that it would be dangerous to move him in his then condition. The physician who attended Hicks at San Marcos testified that he was first called to see him on the 10th or 11th of April, and continued to treat him until the 18th or 19th of the month, when Hicks left San Marcos to go to his mother's home at Columbus; that Hicks had typhoid fever; had all of the symptoms that generally follow an ordinary case of enteric fever. When this witness last saw Hicks his temperature was 104 and his physical condition very weak and debilitated; his disease was in its first stage and there were no symptoms of its giving away at the time he left San Marcos, and witness advised him not to take the trip. Hicks and mother got into a hack at San Marcos on the 19th and drove to several places in the town at which he got out, transacted business, and re-turned to the hack and got in again without assistance. They drove to the depot, took the cars for San Antonio, and upon arrival there got into a hack and drove to various places in the city, among them the postoffice building, where Hicks got out and went up a long flight of steps and transacted business with the postoffice, he being employed

in the railway mail service. Coming down these steps Hicks for the first time during the day complained of feeling wearied. He then went to his boarding house and lay down for a few minutes, and at 9 o'clock that night took the train for Columbus, arriving at that place about 1 o'clock on the morning of April the 20th. On the car between San Antonio and Columbus, while the train was in motion, Hicks got up and went to the closet, and returning stopped at the water cooler to get a drink. While standing there drinking, the car gave a sudden jerk or lurch and caused him to fall. He fell back against the arm of the bench; his mother ran to him; he raised up on the back of the bench and said, "O, mamma, I have hurt my back," and pressed his hand on his side and said it was hurting him bad. Hicks weighed 175 pounds. He fell on his right side and back against the seat. With his mother's assistance he went back to his seat; he made no complaint except that his side hurt. When he reached Columbus he got out of the car without assistance, and when he got home sat up in a rocking chair, but complained of feeling weak and bad; he had fever at that time.

On the morning of the 21st Dr. Harrison of Columbus was called to see him and continued to attend him until his death on the evening of the 22d. He saw deceased several times on the 21st and on the 22d. He testifies that when he saw Hicks he had no symptoms of typhoid or typho-malarial fever; that Hicks did not die of typho-malarial or typhoid fever, nor had such disease anything to do with his death. When he first saw deceased he was suffering from irritation of the stomach with considerable pain in the back. When he saw him on the second day all the symptoms were aggravated. He was suffering intense distress and anxiety. In addition to these symptoms he had priapism, and at that time the pain was intense and there was a tumefaction over the lower part of the ribs which could only be accounted for by the presumption of a severe wrench or strain of some kind. The priapism could only be accounted for by the presumption that he had a severe injury to the spinal cord. His abdominal temperature was very high; held the thermometer on his abdomen and the temperature ran up to 108; his pulse was falling and witness saw that death was close at hand; just before he died he vomited up blood, and blood continued to ooze out of his mouth and nose after death. In the opinion of the witness the injury to the stomach aided by the injury to the spine caused traumatic peritonitis, from which Hicks died, and these injuries, independent of all other causes, were the cause of his death. Could not say whether there was a rupture of the stomach or not, if so it did not give way finally until the second day. Could not fix the exact location of the injury; did not know whether it was in the membranes of the stomach or in the duodenum; could not tell without post mortem examination. The duodenum is the first part of the intestines below the stomach, and the pyloric orifice is the opening from the stomach into the intestines. The wound in the region of the pyloric orifice was the immediate cause of death. The injury to the spine might have caused

death if the other had not done so. Dr. Beall, who treated deceased at San Marcos, agreed with Dr. Harrison that the symptoms above stated are not those of septic peritonitis produced by typhoid fever, and could not have resulted from the trip from San Marcos to Columbus unaccompanied by some extraordinary violence.

We think these facts authorize the conclusion that Ellis Hicks' death was the result of bodily injuries received through external violent and accidental means, and that such injuries independent of all other causes occasioned his death. The judgment of the trial court in this case can not be disturbed on the ground of the insufficiency of the evidence. Oil Co. v. Gin Co., 33 S. W. Rep., 748; Insurance Co. v. Hill, 36 S. W. Rep., 102; Fielding v. White, 33 S. W. Rep., 773; Insurance Co. v. Thomas, 17 S. W. Rep., 275; Railway v. Gordon, 11 Texas Civ. App., 672. This disposes of appellant's fourth assignment of error, which presents the issue of the sufficiency of the evidence to support the judgment of the trial court.

Appellant's first assignment of error attacks the judgment on the ground of variance between the allegata and probata in this, that the petition alleges that the death of said Ellis Hicks was caused from his having wrenched and hurt his back, ruptured his stomach and dislocated one of his kidneys, and the testimony shows there was no dislocation of the kidney, no rupture of his stomach, and that the injury to his back did not cause his death. The facts show that the death of deceased was caused by injury either to his stomach proper or to the pyloric orifice which connects the stomach with the intestines, and while such injury is not designated by the witness as a rupture, the effects of such injury as detailed by the witness are such as must have resulted from a rupture of the membranes. There was no objection to the admission of the testimony on the ground of variance, and we do not think such exception could have been properly sustained. Railway v. White, 51 S. W. Rep., 855; Railway v. McMannentz, 70 Texas, 473.

The second and fifth assignments challenge the judgment on the ground that the preponderance of evidence shows (1) that the accident alleged was occasioned partly and indirectly, if not wholly and directly, by the diseased and infirm physical condition of the insured at the time of such accident; (2) that the accident alleged was occasioned partly and indirectly, if not wholly and directly, by a voluntary overexertion on the part of said insured while in a weak and debilitated condition, the result of disease from which he had been suffering for ten days, and from which he was then suffering; (3) that the accident alleged was occasioned partly and indirectly, if not wholly and directly, by voluntary exposure to unnecessary danger on the part of the insured when suffering from disease. The evidence does not show that the diseased condition of the insured contributed to the accident. It is possible such was the case, but the burden to show this fact was on appellant, and the accident shown by the testimony is one that could have happened to a person in perfect health. The same may be said

as to the over-exertion and voluntary exposure to unnecessary danger; such over-exertion and exposure are not shown by the evidence to have contributed to the accident. Insurance Co. v. Jones, 94 Ala., 434; Insurance Co. v. Meadows, 31 S. W. Rep., 578.

The third assignment of error complains of the judgment because the uncontroverted testimony shows that the alleged accident occurred while the assured was affected with disease and bodily infirmity, and while he was engaged in voluntary over-exertion and voluntary exposure to unnecessary danger. This assignment presents to the writer the most difficult question in the case. If we give a strict technical interpretation to the conditions attached to the policy, we would be compelled to hold that under the facts in this case the appellant is not liable; but the well established rule is that conditions in an insurance policy, having been framed for the benefit of the insurer, are to be construed strongly against those for whose benefit they are reserved. In a policy which does not contain the exception of voluntary exposure to unnecessary danger, it has been uniformly held that the negligence of the insured would not defeat a recovery, and the object of the insertion of such condition in the policy is to make the law of contributory negligence apply to accidents covered by the policy. Applying the rules of contributory negligence to the facts in this case, the diseased condition of the insured and his voluntary over-exertion and exposure to unnecessary danger would not defeat the right of recovery unless same were the proximate cause of the accident, and as already stated the facts of this case do not show that appellee's condition nor his over-exertion nor exposure had anything to do with the accident. To adopt the rule contended for by appellant would be to virtually annul and destroy the contract of insurance. Keen v. Accident Assn., 36 N. E. Rep., 891; Association v. Sargent, 142 U. S., 691; Freeman v. Insurance Co., 144 Mass., 572; Anthony v. Association, 38 N. E. Rep., 973; Badenfield v. Association, 27 N. E. Rep., 769; Goldschmidt v. Insurance Co., 102 N. Y., 486; Meadows v. Insurance Co., supra.

The remaining assignment complains of that portion of the judgment which awards 12 per cent penalty and $500 attorney's fees. That the statute under which such penalty and attorney's fees were allowed is not obnoxious to the fourteenth amendment of the Constitution is not an open question in this State. See Insurance Co. v. Coalson, 22 Texas Civ. App., 64.

We find no error in the judgment of the court below, and it is in all things affirmed.

*Affirmed.*

### ADDITIONAL CONCLUSIONS OF FACT.

In order that the findings of fact in our opinion filed herein on February 17, 1900, may be made more definite and certain, at the request of appellant we file the following additional conclusions of fact, viz:

One of the conditions attached to and forming a part of the policy of insurance sued on in this case is: "This insurance does not cover accident nor death resulting wholly or partly, directly or indirectly, from any of the following causes; or while so engaged or affected: Disease or bodily or mental infirmity, voluntary over-exertion, or voluntary exposure to unnecessary danger."

At the time of the accident the insured, Ellis Hicks, was affected with disease. It was unnecessary for said Hicks to take the trip from San Marcos to Columbus, and in view of his then condition, and the probable effect of such trip on his disease, the taking of said trip was on his part voluntary over-exertion and voluntary exposure to unnecessary danger. It is not shown by the evidence that such over-exertion or exposure in any way contributed to the accident which caused his death; and his said death did not result, either wholly or partly, directly or indirectly, from such disease, over-exertion or exposure.

Writ of error refused.